IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,    )
    )
        Plaintiff,    )
    )
    v.    )  Crim. No. 03-72
    )
GARY KENNETH WILDER, JR.    )
    )
        Defendant.    )

<u>MEMORANDUM ORDER</u>

<u>Conti</u>, District Judge

Pending before the court is the renewed motion for withdrawal of guilty plea filed by defendant Gary Kenneth Wilder, Jr. ("defendant" or "Wilder"). The court will deny the renewed motion because after considering and balancing the three factors for withdrawal of a guilty plea set forth in <u>United States v. Jones</u>, 336 F.3d 245 (3d Cir. 2003) ("<u>Jones II</u>"), the court finds that defendant did not show a fair and just reason for withdrawing his guilty plea.

## ***<u>Background</u>***

Defendant appeared before this court on November 4, 2003 to change his previous plea of not guilty at counts 6 and 9 of the indictment to a plea of guilty. At the hearing, the court placed defendant under oath and found defendant competent to plea without objection from his previous counsel. Transcript of November 4, 2003 Hearing ("Tr.") at 3-5. The court further explained defendant's constitutional and other rights, including: defendant's right to a trial by jury; his privilege against self-incrimination; his right to participate in jury selection; the applicable burden of proof beyond a reasonable doubt the government would be required to meet

at trial; and his right to confront, question and cross-examine witnesses at trial. Tr. at 6-9. The court also explained that if defendant entered a guilty plea, he would waive all of those rights. Id. at 9. Defendant indicated he understood the effect of a guilty plea and stated to the court that he still wanted to plead guilty. Id. at 9-10.

The court then explained that the United States Sentencing Guidelines would apply to any sentence imposed at counts 6 and 9. Id. at 11. The court informed defendant that it would be unable to determine defendant's guideline sentence range until after a presentence report was prepared by the United States Probation Officer, and until after both defendant and the government had an opportunity to respond to the facts contained in that report. Id. After informing defendant that a presentence report was necessary to determine his Guidelines range, the court advised defendant of the minimum and maximum penalties with respect to counts 6 and 9 of the indictment. Id. at 13-15. The court stated with respect to count 6 that the minimum penalty was a term of imprisonment of 5 years with a term of supervised release of 4 years, and that the maximum penalty was a term of imprisonment of 40 years, a lifetime of supervised release, and a fine of $2,000,000. With respect to count 9, the court informed defendant that the minimum penalty was a term of imprisonment of not less than 5 years to be served consecutively to any other term of imprisonment imposed for conviction on count 6 in the indictment. The court explained that because the term of imprisonment at count 9 ran consecutively, it would be added to any term of imprisonment to which defendant was sentenced at count 6. The court then stated that the maximum penalty to count 9 was a term of life imprisonment, a term of supervised release of 3 years, and a fine of $250,000. Finally, the court, in a summary of the total penalty defendant would be facing, stated that the total minimum penalty as to counts 6 and 9 would be a term of imprisonment of 10 years and a term of supervised release of 5 years, and

that the total maximum penalty as to counts 6 and 9 could be a life term of imprisonment, a life

term of supervised release, and a fine of $2,250,000.  Id.

       The court also asked defendant the following question: "Mr. Wilder, do you understand

that if the sentence imposed is more severe than you expected, you will still be bound by your

plea and will not be able to withdraw?"  Id. at 12.  Defendant replied, "Yes."  Id.  Defendant also

stated that he understood everything the court stated to him, including the minimum and

maximum penalties for his offenses.  Id. at 13-16.  Defendant further testified no one had

threatened or coerced him in any way to plead guilty, and that, with respect to the terms of his

written plea agreement with the government, no promises had been made to induce him to plead

guilty.  Id. at 18, 24-25.  The court entered into the following exchange with defendant regarding

whether he had received any promises or predictions with respect to the actual sentence he

would receive:

THE COURT:       Mr. Wilder, has anyone made any promise other than the promises
made in the plea agreement that has induced you to plead guilty?

MR. WILDER:     No.

THE COURT:       Has anyone made any prediction or promise to you as to
what your aactual [sic] sentence will be other than what
you've been told as a minimum and maximum sentence?

MR. WILDER:     No.

THE COURT:       Has anything I said today other than what I told you about
the minimum and maximum sentence suggested to you
what your actual sentence will be?

MR. WILDER:     No.

THE COURT:       Have you been instructed by the government attorney, your
attorney or anyone else to respond untruthfully to any question
concerning a promised sentence?

3

         MR. WILDER:       No.

Id. at 24-25.

     Immediately after the above exchange, the court asked and defendant responded to the

following two questions:

         THE COURT:      Mr. Wilder, did you conspire to distribute and possess with
                           the intent to distribute 100 grams or more of heroin in
                           violation of Title 21, United States Code Section 846, as set
                           forth in Count 6 of the indictment filed at Criminal No.
                           03-72, which I have summarized for you a few minutes
                           ago?

         MR. WILDER:       Yes.

         THE COURT:      Mr. Wilder, did you carry a firearm during and in relation
                           to drug trafficking crime and/or possess a firearm in
                           furtherance of a drug trafficking crime in violation of Title
                           18, United States Code, Section 924(c)(1)(A)(I), as set
                           forth in Count 6 of the indictment filed at Criminal No. 03-
                           72?

         MR. WILDER:       Yes.

Id. at 25.

     The government then summarized the government's evidence as to counts 6 and 9,

stating that the charges against Wilder were a result of a multi-agency investigation of the

Michael Good drug trafficking organization.  Id. at 27.  The government explained that it was

able to procure a court authorized wiretap on a total of five cellular phones: two of the phones

belonged to Michael Good, and three other cell phones belonged to other alleged co-conspirators

indicted in Criminal Action No. 03-72.  Id. at 27-28.  The Drug Enforcement Administration and

the Pittsburgh Police Department were able to monitor calls made on these cellular phones, as

well as use surveillance and other investigative techniques, in order to confirm that Michael

Good's organization was distributing large quantities of crack cocaine and heroin on Pittsburgh's

4

North Side.  Id. at 28.  The government noted that it intercepted numerous cellular phone calls between Wilder and Michael Good which revealed that Wilder was obtaining heroin from Michael Good that Wilder distributed to others.  Id. at 28-29.  On January 3, 2003 agents from the Drug Enforcement Administration intercepted several telephone calls indicating that a deal was going to take place between Michael Good and Wilder.  Id. at 29.  The agents confirmed that a deal took place on January 3, 2003  between Michael Good and Wilder at the Red Roof Inn in Robinson Township, Pennsylvania.  Id.

After Wilder took possession of the drugs, Pittsburgh Police officers on the same day proceeded to conduct a traffic stop of the vehicle in which Wilder was traveling.  Id.  The vehicle was searched pursuant to that stop and police uncovered a bag containing 125 bricks of heroin, totaling 750 stamp bags of heroin.  Id.  The bag also contained a 9 millimeter semi-automatic handgun.  Id.  Subsequent recorded telephone calls between Wilder, Michael Good and other alleged co-conspirators intercepted by the multi-agency task force revealed that the co-conspirators were concerned that they were facing federal drug and gun charges.  Id.

On February 18, 2003, a federal grand jury charged Michael Good, Wilder and 11 other alleged co-conspirators as being part of the drug trafficking organization.  Id.  Wilder was arrested on February 22, 2003.  Id.  Following his arrest Wilder was advised of his Miranda rights and he agreed to make statements.  Id.  Wilder admitted to federal agents that Michael Good was one of his heroin sources of supply and explained that on January 3, 2003, Michael Good had fronted him fifteen bricks of heroin and the 9 millimeter semi-automatic handgun.  Id.  That gun and the fifteen bricks of heroin were among the items seized from Wilder's vehicle during the January 3, 2003 traffic stop.  Id.  Wilder also told the agents that he owed Michael Good $4,500 for the gun and the drugs, and further admitted that he obtained numerous bricks of

heroin on several occasions from Michael Good, including on one occasion three weeks prior to his arrest.  Id.

      After the attorney for the government summarized Wilder's involvement in the offenses, the court asked defendant whether he agreed with the prosecution's summary of what he did. Wilder indicated to the court that he agreed with the government's summary of his conduct and stated that he still wanted to plead guilty.  Id. at 31.  The court then entered a judgment of guilty on the record, based upon the government's factual proffer and defendant's concurrence in that proffer.  The court stated:

> THE COURT:      Mr. Wilder, since you acknowledge that you are, in fact, guilty as charged in Counts 6 and 9, since you know your right to a trial, since you know what the minimum possible penalty is, since you know what the maximum possible penalty is, since you are voluntarily pleading guilty, the court accepts your guilty plea and hereby enters a judgement [sic] of guilty on your plea.

Id. at 31.

      Wilder was scheduled to be sentenced by the court on January 23, 2004.  One week prior to that date, Wilder filed a motion to withdraw his guilty plea.  In that motion, defendant's previous counsel indicated that he incorrectly determined defendant's qualifications for career offender status under the Guidelines and that defendant was now facing four times the exposure that the attorney had predicted.  Attached to defendant's motion were two signed verifications from defendant and defendant's previous counsel, attorney Paul Gettleman, asserting that the actions of defendant's previous counsel constituted ineffective assistance of counsel and precluded defendant's plea from being knowingly and intelligently made.  The verifications further indicated that Wilder would not have made the guilty plea had he known he would be classified as a career criminal under the United States Sentencing Guidelines.

6

The court held a status conference on January 30, 2004 to discuss the motion to withdraw defendant's guilty plea.  Following that status conference, attorney Gettleman filed a motion to withdraw as counsel, citing a conflict of interest in that he would most likely be required to testify at a hearing with respect to his alleged ineffective assistance of counsel.  The court granted that motion, and on February 18, 2004, appointed new counsel for defendant.  After a status conference on March 15, 2004, the court directed the government to file its opposition to defendant's motion and directed defendant's current counsel to file a response.  The parties filed the respective documents with the court, and the court scheduled an evidentiary hearing for May 27, 2004.

At the evidentiary hearing, both defendant and his former counsel testified.  Attorney Gettleman testified that he reviewed defendant's "rap sheep" of former convictions in conjunction with the Sentencing Guidelines.  Transcript of May 27, 2004 Hearing ("5/27/04 Tr.") at 9-10.  He stated that among defendant's previous convictions was a prior felony conviction.  Id.  Attorney Gettleman testified that he believed, according to the plain language of the statute and the Sentencing Guidelines, that a state simple assault misdemeanor would not count toward defendant's career criminal offender status.  Id. at 10.  He told the court that he reviewed defendant's case with him - including defendant's criminal history and its effect on defendant's probable Sentencing Guideline range of imprisonment - at the Allegheny County Jail several days prior to the change of plea hearing.  Id.  Specifically, he testified that he counseled defendant that defendant had an offense level in the low 20's and that it was his belief that defendant's sentence would be under 10 years.  Id. at 9-10, 14.  He also explained to defendant that the sentence on the gun charge would be five years consecutive to the drug charge.  Id. at 16.

7

The court questioned attorney Gettleman about United States v. Dorsey, 174 F.3d 334 (3d Cir. 1999), a decision in which the United States Court of Appeals for the Third Circuit concluded that the Pennsylvania offense of simple assault was a "crime of violence" and could be considered for purposes of determining career offender status.  5/27/04 Tr. at 19.  Attorney Gettleman stated that he "had no idea about [Dorsey]" prior to the presentence report.  Id.  He testified that he had been practicing as a criminal attorney for over thirty years, and that less than five percent of his practice was devoted to federal criminal work.  Id. at 10.  He stated that he followed what he believed was the plain meaning of the statute in advising his client.  Id.   He concluded his testimony by acknowledging that he "failed" defendant by giving him wrong advice, and that was why he filed the motion for defendant to withdraw his guilty plea.  Id. at 20.

The only other witness appearing on behalf of defendant was Wilder himself.  Defendant testified that attorney Gettleman advised him to plead guilty, telling him that the plea "would be good because it was under ten years . . . ."  Id. at 25.  After Wilder expressed skepticism, his attorney "kind of straight up said you're not going to win."  Id.  Defendant's attorney also told Wilder that the "career criminal didn't pertain to [defendant]."  Id.  Defendant stated that attorney Gettleman did not review how the Guidelines would apply to defendant.  Id.  Defendant further testified that he decided to plead guilty because he feared that he would potentially be exposed to a much longer term of imprisonment if he was adjudged guilty at trial, as opposed to the sentence he would receive for entering a guilty plea.  Id. at 25-26.  With respect to count 6, defendant stated that he was innocent of the crime charged, yet he presented no evidence with respect to his involvement, or lack thereof, in the alleged conspiracy.  Id. at 26.  With respect to count 9, defendant made a bald assertion that the gun seized from him at the January 3, 2003

traffic stop was not his, but he provided no independent evidence corroborating this assertion. Id. at 28.

Under cross-examination from the government, defendant admitted that he lied under oath at the November 4, 2003 change of plea hearing.  Id. at 30.  He testified that he "made most of the stuff up" at the change of plea hearing, and that he waived his constitutional and other rights based upon the advice of attorney Gettleman.  Id. at 26-28.  Defendant stated that he was "scared" and "under a lot of pressure" at the change of plea hearing, and that he supplied the court with the answers he was supposed to give in order to "get it over with." Id. at 28.

In a memorandum opinion dated June 17, 2004, the court denied defendant's motion to withdraw his guilty plea.  (Doc. No. 326).  In that order, the court recognized that each of the following three factors must be considered in connection with a defendant's request to withdraw a guilty plea: (1) whether defendant asserts his innocence; (2) the strength of defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal.  Jones II, 336 F.3d at 252; see also, United States v. Brown, 250 F.3d 811, 815 (3d Cir. 2001);  United States v. Huff, 873 F.2d 709, 711 (3d Cir. 1989).  The court stated that with respect to the third factor the government conceded that it would not be prejudiced by defendant withdrawing his guilty plea, and that, as a result, the court would examine the first two factors to determine whether the plea should be withdrawn.

Reviewing the record, the court held with respect to the first factor that defendant failed to assert meaningfully his innocence because: (1) defendant admitted that he committed the crimes at the prior change of plea hearing; and (2) defendant presented no evidence at his withdrawal of plea hearing (other than a bald assertion of his innocence) contradicting his concession of guilt at the change of plea hearing.  With respect to the second factor, the court

9

stated that it found "merit in defendant's argument that attorney Gettleman's conduct constituted

ineffective assistance of counsel."[1]  Mem. Op. at 16.  The court recognized, however, that the

ineffective assistance of counsel might be waived or cured by defendant's affirmative answers

during the change of plea colloquy relating to defendant's understanding of the possible

minimum and maximum sentences he could receive and to defendant's acknowledgment that no

one threatened or made a promise to him that forced him to plead guilty.  The court noted:

> The court of appeals in Jones II suggested that such conduct might alleviate any prejudice suffered by a defendant from ineffective assistance of counsel, Jones II, 336 F.3d at 254; however, it is uncertain whether the court of appeals created a bright line rule that an affirmative statement from a criminal defendant that he understands the possible minimum and maximum sentences and was not promised or coerced to plead guilty cures ineffective assistance of counsel.
>
> *The court need not resolve this important issue at this time*. Because a criminal defendant must meet all three prongs of the framework in order to withdraw his guilty plea, and because the court finds that defendant failed to meaningfully assert his innocence, the court need not address the second and third prongs of the framework.  Accordingly, defendant's motion to withdraw his guilty plea is denied.

Mem. Op. at 16-17 (emphasis added).  Defendant appealed that decision to the United States

Court of Appeals for the Third Circuit.

The court of appeals vacated the judgment of conviction and remanded the case to the

district court.  United States v. Wilder, 134 Fed.Appx. 527 (3d Cir. 2005).  The court of appeals

stated that the analysis for a withdrawal of guilty plea "requires that a district court *consider*

each factor, but critically, does not make any one mandatory such that failure to establish one

---

[1]  The court's conclusion on that matter, however, did not reflect a complete analysis of the two-prong test under Strickland v. Washington, 466 U.S. 668 (1984), for determining whether a counsel has been ineffective.

will necessarily dictate rejection of the motion." Id. at 528 (emphasis in original).  The court of
appeals stated that it did not find any error in the district court's findings that defendant failed to
assert meaningfully his innocence and that the government would not be prejudiced by defendant
withdrawing his plea.  The case was remanded for the district court to consider and balance all
three factors.

On remand the court, having already made findings with respect to the first and third
factors, now must consider the second factor which was not resolved in its prior opinion – the
strength of defendant's reasons for withdrawing the plea – and then must balance all three
factors.

### Analysis

Rule 11(d) of the Federal Rules of Criminal Procedure requires a criminal defendant to
show a "fair and just reason" in order to withdraw a guilty plea previously accepted by the court.
In determining whether a "fair and just reason" has been established, the court must examine
each of the following three factors: (1) whether defendant asserts his innocence; (2) the strength
of defendant's reasons for withdrawing the plea; and (3) whether the government would be
prejudiced by the withdrawal.  Jones II, 336 F.3d at 252; see also, Brown, 250 F.3d at 815; Huff,
873 F.2d at 711.  The factors set forth in Jones II are not mandatory elements that a defendant
must establish in order to withdraw a guilty plea; rather, the district court must analyze the
factors in toto to reach its conclusion as to whether the defendant has set forth a "fair and just"
reason to withdraw the guilty plea.  United States v. Wilder, 134 Fed. Appx. 527 (3d Cir. 2005)
(district court abused its discretion by considering each of the Jones II factors mandatory).  The
burden of establishing a sufficient basis to withdraw the guilty plea is on the defendant, see
United States v. Hyde, 520 U.S. 670, 676-77 (1997), and that burden is "substantial."  Jones II,

336 F.3d at 252.  This heavy burden reflects the notion that "[o]nce accepted, a guilty plea may not automatically be withdrawn at the defendant's whim."  <u>Brown</u>, 250 F.3d at 815.

Furthermore, because Rule 11(b)(3) of the Federal Rules of Criminal Procedure requires the court to be satisfied as to the defendant's guilt before accepting a guilty plea, in order to demonstrate a "fair and just reason" to withdraw the plea the "defendant must . . . not only reassert innocence, but *give sufficient reasons to explain why contradictory positions were taken before the district court* and why permission should be given to withdraw the guilty plea and reclaim the right to trial."  <u>United States v. Jones</u>, 979 F.2d 317, 318 (3d Cir. 1992) (emphasis added).   The court of appeals in reviewing this court's prior order stated that the district court's primary error was not weighing each of the factors set forth under <u>Jones II</u>.  The court of appeals, however, recognized that the district court's conclusion that defendant failed to demonstrate his innocence was correct and also agreed that the government would not suffer any prejudice by allowing defendant to withdraw his plea.  Thus, as noted above, the issues before this court now concern the second factor – the strength of defendant's reasons for withdrawing the plea – and the need to consider the factors "*in toto*."

In the prior decision, this court reviewed defendant's reason for withdrawing his plea, *i.e.*, ineffective assistance of counsel, but did not determine the strength of that reason for withdrawing his guilty plea.  It is clear that defendant's attorney prior to the guilty plea hearing provided erroneous advice to defendant about the Guidelines and that the attorney made a serious mistake.  Defendant argues that his previous attorney's mistake constituted ineffective assistance of counsel, thereby showing a strong reason for withdrawing the guilty plea.

In order to show ineffective assistance of counsel, defendant must satisfy the two-prong test set forth in <u>Strickland v.Washington</u>, 466 U.S. 668 (1984), which requires a showing that 1)

the "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," Id. at 687, and 2) "that the deficient performance prejudiced the defense." Id.;  Jones II, 336 F.3d at 254 (second prong requires showing that the defendant suffered "'sufficient prejudice' from his counsel's errors").  "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." Strickland, 466 U.S. at 696.

An erroneous sentencing calculation by a defendant's counsel does not in and of itself constitute ineffective assistance of counsel under Strickland.  In Masciola v. United States, 469 F.2d 1057 (3d Cir. 1972), the court of appeals noted that "[a]n erroneous prediction of sentence by counsel does not render a guilty plea involuntary."  Id. at 1059.  The court of appeals ruled:

> When the pleading proceedings record shows clearly that defendant was questioned as to the voluntariness of his plea, there was no need for an evidentiary hearing to reconsider the voluntariness issue when the only claim is that counsel inaccurately predicted the sentence . . . .  Defendant acknowledged when pleading that he was aware that he could be sentenced to five years.

Id.  The "defendant's understanding of the consequences of a guilty plea" was central to the court of appeals' decision to affirm the district court's denial, among other things, of permission to withdraw a guilty plea.  Id.

In Nwachia v. United States, 891 F.Supp. 189 (D.N.J. 1995) (under 28 U.S.C. § 2255, defendant sought to vacate his sentence to permit him to enter a not guilty plea), the court considered the defendant's argument that his counsel was ineffective at the time the defendant pled guilty by reason of his counsel's failure to inform the defendant "that he would be sentenced as a career offender under the Sentencing Guidelines."  Id. at 191.  Defendant asserted his attorney told him his sentence would likely be "three-and-one-half to four years in prison,"

13

which was significantly less than the 210 months to which he was actually sentenced.  The court

rejected the defendant's argument because the colloquy at his plea hearing established that the

defendant could not satisfy the first prong of the <u>Strickland</u> test.  The court stated:

> Given the clear warning that the court could not know in advance what the
> eventual Guideline range would be until a presentence report was prepared, [and]
> the fact that [the defendant] was informed that he faced a maximum sentence of
> 40 years in prison . . ., it is abundantly clear that [the defendant] has failed to
> demonstrate that his counsel's representation "fell below an objective standard of
> reasonableness."

<u>Id.</u> at 199.

In <u>Brown v. United States</u>, 75 F.Supp.2d 345 (D.N.J. 1999) (considered motion under 28

U.S.C. § 2255 to vacate a defendant's sentence entered after he entered a plea of guilty),

however, the court recognized that an attorney's failure to warn his client that he might qualify

as a career offender would arguably satisfy the first prong of the <u>Strickland</u> test.  "It is deficient

performance for an attorney to fail to provide good-faith advice about the sentencing

consequences of a guilty plea."  <u>Id.</u> at 355.  The court further recognized that the second prong of

the <u>Strickland</u> test may not be established by that failure in the context where an adequate guilty

plea hearing is held.  The court stated:

> It has long been settled as a general rule that where an adequate
> guilty plea hearing has been conducted, an erroneous prediction or
> assurance by defense counsel regarding the likely sentence does not
> constitute grounds for invalidating a guilty plea on grounds of ineffective
> assistance of counsel . . . .
>
> The rational is that the <u>Rule ll</u> colloquy, which advises the
> defendant of the minimum and maximum imprisonment range under the
> statute and provides other necessary information about the Guidelines
> sentencing process, eliminates any arguable prejudice from an earlier
> estimate by counsel.

<u>Id.</u> at 355.

14

The court, however, noted that the United States Court of Appeals for the Third Circuit has not directly addressed this matter in the context where erroneous advice is given about a defendant's career offender status and that other circuits are split on this issue. Id. at 356. The court reviewed the decision in United States v. Foster, 68 F.3d 86, 87 (4ᵗʰ Cir. 1995), which involved a situation where defense counsel assured his client he would not be sentenced as a career offender and then his client was sentenced based upon his career offender status. In Foster the court of appeals found the defendant could not have been prejudiced by that erroneous advice. It stated:

> We have no reason to suspect that [the defendant's] attorney's performance fell below an objective standard of reasonableness. However, we do not reach this question because [the defendant] was clearly not prejudiced by any misstatements made by his attorney . . . . [A]ny misinformation [the defendant] may have received from his attorney was corrected by the trial court at the Rule 11 hearing, and thus [the defendant] was not prejudiced . . . . Therefore, if the trial court properly informed [the defendant] of the potential sentence he faced, he could not be prejudiced by any misinformation his counsel allegedly provided him.

Id. at 87-88 (quoted in Brown, 75 F.Supp.2d at 356-57).

In Brown, the district court recognized that the United States Court of Appeals for the Ninth Circuit did not reach the same conclusion as Foster. Brown, 75 F.Supp.2d at 357. In Risher v. United States, 992 F.2d 982 (9ᵗʰ Cir. 1993), the court found that the failure of a counsel to advise his client of possible career offender status satisfies Strickland's first prong and that a defendant is not precluded from demonstrating prejudice even if a proper guilty plea hearing is held. Although the court in Brown recognized the split among the circuits and noted that it believed that the United States Court of Appeal for the Third Circuit might follow Risher, it did not resolve the conflict and decided the issue on other grounds.

15

In <u>Rodriguez-Amador v. United States</u>, No. Cr. A. 95-072-SLR, 2001 WL 1104676 (D. Del. Sept. 17, 2001), the district court dealt with a somewhat analogous issue and resolved the matter as the court did in <u>Foster</u>.  In <u>Rodriguez-Amador</u>, the defendant argued his counsel was ineffective because the counsel told the defendant he would receive a three-point downward departure, but the court did not grant the departure.  The erroneous advice of counsel was found not to prejudice the defendant by reason of the adequacy of the guilty plea 11 hearing.  "The <u>Rule 11</u> colloquy, during which the defendant is informed of the maximum possible sentence and fines for the offense to which he intends to plead guilty, eliminates any prejudice that might arguably attach to counsel's erroneous sentencing prediction."  <u>Id.</u> at *4-5.

This court agrees with the analysis in <u>Brown</u> with respect to the first prong of the <u>Strickland</u> test and concludes that the failure of defendant's previous counsel to advise him about the possibility that he might be classified as a career offender was deficient advice that was below the acceptable standard for a criminal defense attorney in federal court.  Defendant satisfied the first prong of the <u>Strickland</u> analysis.

The second prong requires the court to determine if the deficient performance of defendant's previous counsel "prejudiced the defense."  <u>Strickland</u>, 466 U.S. at 687.  In this respect, defendant's testimony at the guilty plea hearing is instructive.  Defendant appeared before this court on November 4, 2003 to change his previous plea of not guilty to a plea of guilty.  At the hearing, the court placed defendant under oath and found defendant competent to plea without objection from his previous counsel.  The court further explained defendant's rights, including: defendant's right to a trial by jury; his privilege against self-incrimination; his right to participate in jury selection; the applicable burden of proof beyond a reasonable doubt the government would be required to meet at trial; and his right to confront, question and cross-

16

examine witnesses at trial.  The court also explained that if defendant entered a guilty plea, he would waive all of those rights.  Defendant indicated he understood the effect of a guilty plea and stated to the court that he still wanted to plead guilty.

The court also explained that the United States Sentencing Guidelines would apply to any sentence imposed at counts 6 and 9.  The court informed the defendant that it would be unable to determine defendant's guideline sentence range until after a presentence report was prepared by the United States Probation Officer, and until after both the defendant and the government had an opportunity to respond to the facts contained in that report.  After informing defendant that a presentence report was necessary to calculate his Guideline range, the court reviewed the minimum and maximum penalties with respect to counts 6 and 9 of the Indictment.

The court asked defendant the following question:  "Mr. Wilder, do you understand that if the sentence imposed is more severe than you expected, you will still be bound by your plea and will not be able to withdraw?"  Defendant replied, "Yes."  Defendant also stated that he understood everything the court stated to him, including the minimum and maximum penalties for his offenses.  Defendant further testified no one had threatened or coerced him in any way to plead guilty, and that no promises or predictions had been made with respect to his actual sentence other than what he had been told regarding the minimum and maximum penalties.  Wilder also agreed with the government's summary of the facts giving rise to the offenses to which he plead guilty, which included defendant's confessing to the instant offenses.

Under those circumstances, Wilder cannot satisfy the second prong because he is unable to demonstrate sufficient prejudice.  He was competent; he understood the minimum and maximum penalties he could receive at the change of plea hearing; he understood that the Sentencing Guidelines range could not be determined until after the presentence report had been

17

prepared; and he answered "no" when asked whether anyone made any prediction or promise as to what his actual sentence would be.

During the guilty plea hearing it was clear that defendant understood the consequences of his plea and that his plea was voluntary. See Masciola v. United States, 469 F.2d 1057 (3d Cir. 1972). The plea colloquy and defendant's answers support the conclusion that the attorney's erroneous advice was not prejudicial. See Rodriquez-Amadour, 2001 WL 1104676 at *4-5; see also Foster, 68 F.3d at 87-88. Under the circumstances of this case, the court concludes that defendant did not satisfy the second prong of the Strickland test, and, thus, defendant did not prove ineffectiveness of counsel. The strength of defendant's reason for withdrawing his guilty plea was weak.

After considering and balancing the three factors set forth in Jones II for withdrawal of a guilty plea, the court will not grant defendant's renewed motion to withdraw his guilty plea. Here, the only factor which weighed in defendant's favor was the third factor – lack of prejudice to government. Balancing that factor against the failure of defendant to assert meaningfully his innocence and the weakness of his reason for withdrawing his guilty plea, the court determines that defendant did not show a fair and just reason for withdrawing his guilty plea.

Even if defendant was found to have proven that his counsel was ineffective, thereby satisfying the second Jones II factor by demonstrating the strength of his reason for withdrawing his guilty plea, this court, after considering and balancing all three factors, would still find that defendant did not show a fair and just reason for withdrawing his guilty plea. The failure of defendant to assert his innocence meaningfully is compelling and weighs heavily in the balancing of the factors. At the guilty plea hearing, the defendant admitted he committed the offenses to which he pled guilty and prior to that hearing, he confessed, after receiving Miranda

18

warnings, to those crimes.  He also acknowledged his understanding of the consequences of his guilty plea at the guilty plea hearing.  Specifically, he knew that the actual sentence would only be determined after the presentence report was prepared and that no prediction as to the actual sentence, other than the minimum and maximum penalties, was made.  Under those circumstances the factors weigh against permitting defendant to withdraw his guilty plea.  A fair and just reason for withdrawal of the guilty plea was not shown by defendant.

### *Conclusion*

After considering and balancing the factors set forth in Jones II, this court finds the first factor relating to assertion of innocence was compelling and weighs heavily in the balancing of the factors with respect to withdrawal of defendant's guilty plea because the strength of the evidence concerning defendant's guilt was strong, especially in light of his confession which was given after he received Miranda warnings, and defendant failed to make any meaningful showing that he was innocent.  As noted above, an attorney's wrongful calculation under the Sentencing Guidelines alone is insufficient as a strength of reason for withdrawal when, as in this case, an adequate guilty plea hearing is held.  Considering and balancing the factors together, the court finds that defendant failed to meet his burden to demonstrate a "fair and just" reason to withdraw his guilty plea.

Defendant's renewed motion to withdraw his guilty plea will be **DENIED**.  In accordance with the decision of the court of appeals, the court has scheduled a date to resentence the defendant pursuant to <u>United States v. Booker</u>, 125 S.Ct. 738 (2005).

By the court,

<u>/s/ Joy Flowers Conti</u>
Joy Flowers Conti
U.S. District Judge

Dated: September 15, 2005

cc: Counsel of Record